IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY

| | |
|---|---|
| AMANDA WOODRUFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: |
| v. ) | |
| ) | REQUEST FOR JURY TRIAL |
| LET'S PRETEND LEARNING ) | |
| CENTER LLC, ) | |
| ) | |
| and ) | |
| ) | |
| ALICE F. BOYD, ) | |
| ) | |
| Defendants. ) | |

Serve Let's Pretend Learning Center LLC         Serve Alice F. Boyd
Registered Agent: Alice F. Boyd                 180 N Clairborne Road
180 N Clairborne Road                           Olathe, Kansas 66062
Olathe, Kansas 66062

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, Amanda Woodruff, and for her claims against the above-named Defendants, alleges and states as follows:

1. Plaintiff is, and at all times set forth below was, a resident of Olathe, Kansas.

2. Defendant Let's Pretend Learning Center LLC ("LPLC") is a Kansas limited-liability company, with its principal place of business in Olathe, Kansas.

3. Defendant Alice F. Boyd is the owner of Defendant LPLC, Plaintiff's former manager, and a resident of Olathe, Kansas.

4. Defendant LPLC works in an industry affecting interstate commerce, in that Defendant operates a childcare facility utilized by residents of both Kansas and Missouri.

1

5. Defendant LPLC is an "employer" as defined by the Fair Labor Standards Act, 29 U.S.C. § 203(d) (2018).

6. Defendant Boyd is an "employer" as defined by the Fair Labor Standards Act, 29 U.S.C. § 203(d), in that she acted directly and/or indirectly in the interest of Defendant LPLC in relation to Plaintiff's former employment with Defendant LPLC.

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Count I of Plaintiff's Complaint arises under the laws of the United States, specifically the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.

8. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Counts II, III and IV of Plaintiff's Complaint, as those counts are so related to the claims encompassed within Count I as to form one case or controversy.

## FACTS COMMON TO ALL COUNTS

9. Plaintiff began working for Defendant LPLC in or about January 2018 as a second job.

10. At all times during Plaintiff's employment with Defendant LPLC, Defendant Boyd was Plaintiff's direct supervisor.

11. Plaintiff worked supervising children at Defendant LPLC's childcare facility.

12. Plaintiff was required to clock in and out using a time management system each shift that she worked.

13. Both before and during her employment with Defendant LPLC, Plaintiff also utilized Defendant LPLC's services to supervise her children while Plaintiff worked her primary job.

14. Once Plaintiff began working for Defendant LPLC, she learned that

2

Defendant LPLC and Defendant Boyd would not pay Plaintiff for work, but instead issue a "credit" towards her bill.

15. Plaintiff did not oppose this agreement at the time.

16. However, Plaintiff became very suspicious as her bill did not seem to change despite her hours worked.

17. In early August 2019, Plaintiff began asking Defendant Boyd what her rate of pay was.

18. Defendant Boyd would not directly answer Plaintiff.

19. Plaintiff consulted an attorney regarding whether she had the right to be compensated for her work.

20. On September 5, 2019, Plaintiff sent a text message to Defendant Boyd stating that Plaintiff believes she was legally entitled to be paid and to know her hourly rate of pay.

21. Defendant Boyd responded by stating "you're not working for pay[,] you are working in trade" and refusing to pay Plaintiff anything.

22. Plaintiff informed Defendant Boyd that she had consulted a lawyer.

23. Defendant Boyd still refused to pay Plaintiff or state what her hourly rate was.

24. On September 6, 2019, Plaintiff again asked Defendant Boyd if she would be paid for working the following day, September 7, 2019.

25. Defendant Boyd responded that Plaintiff would not be paid for her work.

26. On September 7, 2019, Defendant Boyd sent a text message to Plaintiff asking if Plaintiff had "called in today or are you coming in."

27. Defendant Boyd then stated she was "not really interested in playing games" and needed to know if Plaintiff was going to come to work, despite Defendant Boyd and Defendant LPLC refusing to pay Plaintiff.

28. Plaintiff replied that she would work her shift if Defendants promised to pay her for her work.

29. Plaintiff arrived to work on September 6, 2019.

30. Defendant Boyd met Plaintiff as Plaintiff arrived.

31. Defendant Boyd handed Plaintiff a bill for childcare services.

32. Defendant Boyd discharged Plaintiff from employment.

33. Defendant Boyd told Plaintiff that Plaintiff was receiving "credit" at a rate of $9.00 per hour for her work.

34. Defendant Boyd stated that she would not pay Plaintiff because Plaintiff owed her money.

35. Plaintiff protested that she had a right to be paid for her work.

36. Defendant Boyd replied: "I don't care."

37. Defendant Boyd took Plaintiff's keys and escorted her out of the building.

38. Following her discharge, Plaintiff asked Defendant Boyd for an itemized copy of her bill.

39. Defendant Boyd refused to provide any bill to Plaintiff unless Plaintiff would pay a copying fee.

40. On September 10, 2019, Defendant Boyd filed a lawsuit against Plaintiff on behalf of Defendant LPLC in Johnson County Circuit Court, which was assigned Case No. 19LA09384.

41. Defendant Boyd is not a licensed attorney in Kansas.

42. Defendant Boyd is not a licensed attorney in any state.

43. The lawsuit alleges that Plaintiff breached a contract with Defendant LPLC.

44. Defendant filed this lawsuit despite agreeing that a payment had been made on Plaintiff's account less than 10 days earlier.

45. As a purported legal action taken by an entity acting without an attorney, the lawsuit filed by Defendant Boyd and assigned Case No. 19LA09384 is void *ab initio*, preventing Plaintiff from joining her claims to that action (which legally does not exist). *Atchison Homeless Shelters, Inc. v. Cty. of Atchison*, 946 P.2d 113 (Kan. Ct. App. 1997).

46. All actions or inactions of or by Defendant LPLC occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth herein.

## COUNT I - RETALIATION IN VIOLATION OF FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *et seq.* (Against All Defendants)

47. Plaintiff made a good-faith internal complaint regarding suspected violations of the Fair Labor Standards Act.

48. Defendant took adverse employment actions against Plaintiff, including but not limited to discharging Plaintiff from employment, and initiating a lawsuit against Plaintiff.

49. Defendant's adverse employment actions taken against Plaintiff were each based upon, and directly motivated by, Plaintiff exercising her rights under the Fair Labor Standards Act.

50. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff

has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

51. Defendant acted toward Plaintiff with willful conduct, wanton conduct, or malice.

52. Thus, an award of liquated damages and/or punitive damages is appropriate.

53. Plaintiff is also entitled to recover her costs and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against the above-named Defendants in an amount in excess of $75,000, for the costs of this action, for attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT II - CLAIM FOR UNPAID WAGES PURSUANT TO KANSAS WAGE PAYMENT ACT, K.S.A. § 44-312 *et seq*.
### (Against All Defendants)

54. Plaintiff was an employee of Defendant LPLC.

55. Plaintiff performed work, thereby earning wages.

56. Defendants agree that Plaintiff's rate of pay was $9 per hour.

57. Defendants were required to pay Plaintiff at least monthly.

58. Defendant LPLC refused to pay Plaintiff her earned wages.

59. Defendant Boyd was charged with managing the affairs of Defendant LPLC at all times relevant to this matter.

60. Defendant Boyd made the decision on behalf of Defendant LPLC to withhold Plaintiff's wages.

61. Thus Defendant Boyd is deemed an "employer" of Plaintiff under the Kansas Wage Payment Act. Kan. Stat. Ann. § 44-323(b).

62. Defendants actions of refusing to pay Plaintiff were willful.

63. Thus, a penalty pursuant to K.S.A. § 44-315(a) is appropriate.

WHEREFORE, Plaintiff prays for judgment against the above-named Defendants in an amount equal to her unpaid wages, for the costs of this action, for interest from the date upon which Plaintiff should have been paid, for a penalty equal to the amount of Plaintiff's unpaid wages, and for such other and further consideration and relief as the Court may deem just and equitable.

### **COUNT III - RETALIATORY DISCHARGE IN VIOLATION OF PUBLIC POLICY (THE KANSAS WAGE PAYMENT ACT)**
**(Against Defendant LPLC)**

64. Plaintiff exercised rights granted by the Kansas Wage Payment Act by requesting compensation that was owed to her.

65. Defendant LPLC took adverse actions against Plaintiff, including discharging Plaintiff from employment and filing a lawsuit against Plaintiff.

66. Defendant LPLC's adverse employment actions taken against Plaintiff were each based upon, and directly related to, Plaintiff's exercise of rights granted by the Kansas Wage Payment Act.

67. Defendant LPLC's adverse employment actions against Plaintiff violate State public policy clearly declared by the Courts and the Kansas Legislature.

68. The Kansas Supreme Court has explicitly recognized that retaliation against an employee who exercises her rights granted by the Kansas Wage Payment Act supports a claim of retaliatory discharge. *Campbell v. Husky Hogs, L.L.C.*, 255 P.3d 1 (Kan. 2011).

69. As a direct and proximate result of Defendant LPLC's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

70. Defendant LPLC acted toward Plaintiff with willful conduct, wanton conduct, or malice.

71. Thus, an award of punitive and exemplary damages is appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendant LPLC in an amount in excess of $75,000, for the costs of this action, for attorneys' fees, for punitive damages, and for such other and further consideration and relief as the Court may deem just and equitable.

## COUNT IV - VIOLATION OF KANSAS CONSUMER PROTECTION ACT
### (Against Defendant Boyd)

72. Defendant Boyd filed the lawsuit assigned Case No. 19LA09384 on behalf of Defendant LPLC.

73. That suit was not filed under the Smalls Claims Act, and thus required that Defendant LPLC be represented by an attorney licensed to practice law in the State of Kansas.

74. Defendant Boyd is not licensed to practice law in the State of Kansas.

75. Defendant Boyd's filing of the lawsuit on behalf of Defendant LPLC was an act prohibited by Kansas common law. *Babe Houser Motor Co., Inc. v. Tetreault*, 14 P.3d 1149 (Kan. 2000).

76. The Kansas Consumer Protection Act prohibits any "person who is not

licensed or otherwise authorized by the Kansas [S]upreme [C]ourt to practice law in [Kansas]" from "committing any act or omission that is prohibited by...common law as being the unauthorized practice of law." Kan. Stat. Ann. § 50-6,142(a) (2019).

77. Any person who violates K.S.A. § 50-6,142(a) commits "an unconscionable act or practice in violation of [the Kansas Consumer Protection Act], *whether or not it involves a consumer, a consumer transaction or a supplier*." Kan. Stat. Ann. § 50-6,142(b).

78. Any person who violates K.S.A. § 50-6,142(a) "shall be deemed a supplier within the meaning of [the Kansas Consumer Protection Act]." Kan. Stat. Ann. § 50-6,142(c)(2).

79. Any person who is "aggrieved by a violation of [K.S.A. § 50-6,142(a)] shall be deemed a consumer within the meaning of [the Kansas Consumer Protection Act]." Kan. Stat. Ann. § 50-6,142(c)(3).

80. Thus, Defendant Boyd's action in filing the lawsuit is an unconscionable act or practice.

81. As a direct and proximate result of Defendant Boyd's unconscionable act, Plaintiff has suffered injury, including legal expenses, emotional pain, suffering, humiliation, inconvenience, mental anguish, permanent public record of a lawsuit.

82. Plaintiff's injury may be redressed by the greater of her loss, as determined by trier of fact, or a civil penalty of $10,000.

83. Plaintiff may recover her costs, including reasonable attorneys' fees, expended in pursuing this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant Boyd for the greater

of her actual losses or a $10,000 penalty, for the costs of this action, for her attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury in the United States District Court for the District of Kansas, to be held at the Robert J. Dole Federal Courthouse in Kansas City, Kansas, on all accounts and allegations of wrongful conduct alleged in this Complaint.

Respectfully submitted,

 */s/ Daniel L. Doyle*
Daniel L. Doyle, KS Bar No. 11260
Robert A. Bruce, KS Bar No. 28332
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, Kansas  66101
Telephone:  (913) 371-1930, ext. 109
Facsimile:  (913) 371-0147
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com
ATTORNEYS FOR PLAINTIFF